UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20104-CR-ALTMAN

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

RAFAEL PIMENTEL,

    *Defendant*.

_____/

## ORDER

The Defendant has filed a Motion for Compassionate Release (the "Motion" or "Mot.") [ECF No. 48]. The Defendant sought similar relief on April 3, 2020 when he filed his first Motion to Reduce Sentence [ECF No. 46], which this Court denied [ECF No. 47]. In this second Motion, the Defendant amasses supporting facts and legal arguments that were absent from the April 3, 2020 motion. In the intervening five months, as the COVID-19 pandemic has killed almost two-hundred-thousand Americans, the Department of Justice has clarified its position on compassionate release regarding inmates with COVID-19 risk factors. The Government does not oppose this Motion. *See* Response (or "Resp.") [ECF No. 49]. Having carefully considered the Motion, the record, and the governing law, the Court now **GRANTS** the Motion.

## THE FACTS

The Defendant, Rafael Pimentel, is 52 years old. *See* Resp. at 1. In 2019, he pled guilty to one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). *See* Plea Agreement [ECF No. 27] at 1. The Court initially sentenced the Defendant to 46 months in prison, to be followed by three years of supervised release. *See* Aug. 20, 2019 Judgment [ECF No.

38] at 1. But, in response to the Government's Rule 35 Motion, the Court reduced the Defendant's sentence to 31 months. *See* Order Granting Motion for Reduction of Sentence [ECF No. 44] at 1. The Defendant's sentence is set to expire on June 5, 2021, *see* Resp. at 2, which means that—as of this Order—the Defendant has about nine months of his sentence left. *See id*. at 1.

The Defendant "suffers from upper respiratory disease, congestive heart failure, hypertension, hyperchloestedalmia, hyperlipidemia, and supraventricular tachychardia." Mot. at 24. Medical records from the Bureau of Prisons ("BOP") and the Defendant's Presentence Investigation Report ("PSI") document Mr. Pimentel's health conditions, some of which increase his risk of becoming gravely ill from COVID-19. *See* Resp. at 3. The BOP's records reveal that incarceration has exacerbated the Defendant's underlying health conditions. *Id*. On June 3, 2020, for instance, the Defendant had to be hospitalized for acute heart pain, shortness of breath, tachychardia, and hypertension. *Id*.

## ANALYSIS

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other

person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* The Court will discuss each of these four steps in turn.

### I.     Exhaustion of Administrative Rights to Appeal

Both parties agree that the Defendant has exhausted his administrative options. The Defendant, after all, submitted a request for compassionate release to FCI Miami's Warden on June 29, 2020. Request for Early Release (the "Request") [ECF 49-1]. The next day, June 30, 2020, the Defendant's attorney received confirmation that the Warden had received the request. BOP Confirmation [ECF No. 49-2]. And the Defendant did not file this Motion until August 22, 2020—more than 30 days after the Warden had received his request. *See generally* Mot.; *see also* Resp. at 2. Because, in short, the Government took more than 30 days to respond to the Defendant's request, the Defendant's Motion is timely. *Cf.* 18 U.S.C. § 3582(c)(1)(a).

### II.    18 U.S.C. § 3553

This Court agrees with the parties that the relevant § 3553 factors favor the Defendant's release. He has no criminal history, he timely accepted responsibility for a non-violent offense, he actively cooperated with the government, and he has committed no infractions since the inception of his incarceration. *See* Resp. at 4; Mot. at 14. Thus, to the extent they are applicable, the § 3553 factors support the Defendant's request.

### III.   18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

    **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i)    extraordinary and compelling reasons warrant such a reduction; or

    (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582.

    Because the Defendant is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction

[under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

5

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Defendant bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The Defendant can satisfy the "Medical Condition of the Defendant" test by meeting one of two elements. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). Because the Defendant arguably meets the second element ("a serious physical or medical condition" that "substantially diminishes" his ability to care for himself), the Court does not address the first.

The Government agrees that the Defendant's "health conditions constitute a serious physical or medical condition," and that the Defendant's "ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished by these serious medical conditions." Resp. at 4. The Court finds no reason to disagree with the parties' assessment. The Defendant has thus satisfied his burden of showing that "extraordinary and compelling" reasons justify his early release.

### IV.   18 U.S.C. § 3142

The parties agree that the Defendant no longer poses a danger to his community—and the Court sees no reason to disturb this agreement. As the relevant Guidelines provision makes clear, the "extraordinary and compelling reasons" test applies *only if* "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

In assessing dangerousness, Section 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . ., including whether the offense . . . involves . . . a controlled substance; (2) "the weight of the evidence against the person"; (3) "the history and characteristics

7

of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Nearly all of these factors weigh in favor of the Defendant here.

*First*, the Defendant pled guilty to "the offense" of conspiracy to commit money laundering, which does not involve "a controlled substance."

*Second*, the evidence against the Defendant was strong. *See* Plea Agreement [ECF No. 27] at 1.

*Third*, the Defendant has no prior criminal history, he quickly accepted responsibility for his conduct, he actively cooperated with the government, and he has been a model prisoner since his incarceration began. *See* Resp. at 4.

*Fourth*, the Defendant has shown that his release would pose no "danger to any person or the community." According to his proposed release plan, the Defendant will return home to his wife, who lives in Miami-Dade County, where he will remain in quarantine until the end of the pandemic. Mot. at 24; Resp. at 4. At home, the Defendant's wife will care for his medical needs, which—if he were to contract COVID-19—would increase his chances of becoming gravely ill. *See* Resp. at 3.

***

The Court, therefore, **ORDERS and ADJUDGES** as follows:

1. The Defendant's Motion for Early Release [ECF No. 48] is **GRANTED**.
2. The United States Marshals Service and/or the United States Bureau of Prisons ("BOP") shall promptly release the Defendant from custody.
3. The Defendant will be picked up by his family and shall quarantine in his family home in Miami-Dade County for 14 days.

4. The Defendant's sentence of imprisonment is reduced to time served, effective on the date of this Order. The Defendant shall, on the day of his release, begin his three-year term of supervised release and shall abide by the conditions of supervision noted in the Judgment [ECF No. 38].

**DONE AND ORDERED** in Fort Lauderdale, Florida this 9th day of September 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Bureau of Prisons
      U.S. Marshalls